UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————————

JAMES COLANTUONO,

                              Plaintiff,

                                                          DECISION AND ORDER

                                                          10-CV-6446L

                    v.

S. HOCKEBORN, CLERK II, et al.,

                              Defendants.

———————————————————————————————

        Plaintiff, James Colantuono, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983.  Plaintiff, an inmate in the custody of New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights were violated in 2009 while plaintiff was confined first at Elmira Correctional Facility and then at Sullivan Correctional Facility.  In general, all of plaintiff's claims stem from a disciplinary hearing held during May 2009 and plaintiff's subsequent confinement in the Special Housing Unit ("SHU") as a result of that hearing.

        Plaintiff has sued a number of defendants, who at all relevant times were employees of DOCS.[1]  Defendants have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff has not responded to defendants' motion, but he has filed a motion for appointment of counsel.  For the reasons that follow, defendants' motion is granted, plaintiffs' motion is denied, and the complaint is dismissed.

———————————————————

        [1]Plaintiff has also sued one "John Doe" defendant, an unidentified state police investigator.

**BACKGROUND**

On May 14, 2009, defendant Hockeborn, a female DOCS employee who is identified in the complaint as a "Clerk II" at Elmira, filed an Inmate Misbehavior Report against plaintiff, alleging that he had "lunged toward [her], bumped into [her], then reached under [her] coat and grabbed and squeezed [her] in her crotch." Dkt. #14 at 5. Both then and now, plaintiff has denied doing anything improper, contending that any contact between him and Hockeborn was accidental and unintentional, and that the incident alleged by Hockeborn "could not have happened because plaintiff is legally blind." Amended Complaint (Dkt. #4) ¶ 30.

Shortly after this incident or encounter between plaintiff and Hockeborn, plaintiff was placed on keeplock status. On May 15, 2009, plaintiff was served with a copy of Hockeborn's report, and a Tier III disciplinary hearing was begun on May 22, and concluded on May 29, 2009. *Id.* ¶¶ 17, 22.

Plaintiff requested, and was assigned, someone to assist him in connection with the disciplinary proceedings. Plaintiff met with his assistant, variously identified in the complaint as "T. Moots" and "T. Mootz," on May 20. *Id.* ¶ 18.

Defendant Captain Noeth presided over the hearing. Plaintiff alleges that he was provided with no assistant during the hearing, and that at no time was he given a large-print copy of the misbehavior report or other hearing papers. *Id.* ¶ 23. Noeth also allegedly refused to call a certain witness, Nurse Porter, that plaintiff had requested. At the conclusion of the hearing, plaintiff was found guilty and sentenced to two years in the Special Housing Unit ("SHU").

Following the hearing, Plaintiff remained at Elmira Correctional Facility until June 16, 2009, when he was transferred to Sullivan Correctional Facility. Plaintiff alleges that while he was at Elmira, he was not provided with any assistance for his day-to-day activities as a blind person, and that as a result, plaintiff fell and hurt himself. *Id.* ¶ 37. Similarly, plaintiff alleges that after he arrived at Sullivan, he was placed in an ordinary cell, with no accommodation for his

disability, and that this "[r]esult[ed] in plaintiff falling, banging himself against objects." *Id.* ¶ 39.

Plaintiff's disciplinary hearing disposition was reversed on September 24, 2009.[2] Plaintiff alleges that his disciplinary record should have been expunged after the reversal, but that it was not. Plaintiff further alleges that he has been subjected to unfavorable treatment by other inmates and by administrative personnel because his record was not expunged.

The amended complaint does not set out separate causes of action, but alleges generally that the constitutional bases for plaintiff's claims are "due process, equal protection, denial of medical treatment, and malicious prosecution, ADA equal protection [sic]." *Id.* at 10.

## DISCUSSION

### I. Motions to Dismiss:  General Standards

As stated, plaintiff has not responded to the motions to dismiss. His failure to oppose the motions does not, however, relieve the Court of its obligation to consider the merits of plaintiff's claims. "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). Plaintiff's failure to respond to the motions notwithstanding, then, the Court must determine whether, "accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant," plaintiff has stated a facially valid claim. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

Nonetheless, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

---

[2]The complaint alleges that the disposition was reversed by Norman Bezio, who is not named as a defendant in this action. Bezio has been identified in other cases as the Director of Special Housing and Inmate Disciplinary Programs for DOCS. *See, e.g.*, *Delgado v. Bezio*, No. 09 Civ. 6899, 2011 WL 1842294, at *1 (S.D.N.Y. May 9, 2011); *Holmes v. Fischer*, 764 F.Supp.2d 523, 530 (W.D.N.Y. 2011).

enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555; *accord Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n.5.

"[T]his plausibility standard governs claims brought even by *pro se* litigants." *Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *5 (N.D.N.Y. Oct. 22, 2008) (citing *Jacobs v. Mostow*, 271 Fed. Appx. 85, 87 (2d Cir. 2008), and *Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d Cir. 2008)). At the same time, however, the Court is mindful that even after *Twombly*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin*, 521 F.3d at 214. Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)) (additional internal quotation marks omitted).

## II. Application to this Case

## A. Due Process Claims

Plaintiff alleges that his rights were violated in several respects at the disciplinary hearing. He alleges that the hearing officer denied plaintiff's request to call a particular witness, without giving a reason for the denial, and that Noeth did not provide plaintiff with large-print copies of certain documents.

Although a New York inmate has a due process right to call witnesses, *see* 7 N.Y.C.R.R. § 254.5(b), that right is not absolute. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff v.*

*McDonnell*, 418 U.S. 539, 566 (1974).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority ... ."  *Ponte*, 471 U.S. at 496 (quoting *Wolff*, 418 U.S. at 566).  A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable").

Prison hearing officers, then, have the discretion to keep hearings within reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative.  *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994).  At the same time, however, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify ... ."  *Ponte*, 471 U.S. at 497.  They need not give a detailed explanation, however, and "may do so ... by making the explanation a part of the 'administrative record' in the disciplinary proceeding ... ."  *Id.*

In addition, to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.  *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991). (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial"); *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429-31 (W.D.N.Y.  2008) ("[t]o establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing").

The records of plaintiff's disciplinary proceedings indicates that all the witnesses that had been requested by plaintiff were called, and testified in plaintiff's presence.  *See* Dkt. #14 Exs. B, C.[3]  Plaintiff states in his motion that he sought to have four witnesses called to testify:  Dr. Alves, RN Porter, CO Makara, and S. Hill.  The record indicates that plaintiff requested Dr. Alves, RN *Peters*, CO Makara, and S. Hill.  *Id.*  There is no indication, however, that any witness requested by plaintiff was denied.

More importantly, however, plaintiff has not alleged that he was in any way prejudiced by the alleged denial of a witness.  Even assuming that "RN Porter" and "RN Peters" are different people, and that Noeth denied plaintiff's request to have Porter testify, that alone would not entitle plaintiff to relief.  Plaintiff must show that the outcome of the hearing likely would have been different had Porter been called.  *See Clark*, 590 F. Supp. 2d at 429 (dismissing state prisoner's due process claim based on the hearing officer's denial of plaintiff's requests to review certain medical records, and to call DOCS sergeant as a witness, where plaintiff failed to demonstrate that he was prejudiced as a result); *Proctor v. Kelley*, No. 9:05-CV-0692, 2008 WL 5243925, at *22 (N.D.N.Y Dec. 16, 2008) ("The Second Circuit has specifically held that prison disciplinary hearings are subject to a harmless error analysis") (citing *Powell*, 953 F.2d at 750); *Marino v. Humphrey*, No. 05 CIV. 6571, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006) (stating that "[h]armless error analysis applies to prison disciplinary hearings" and that "[c]ourts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding").

Here, plaintiff has not alleged what Porter would have testified about, much less what the substance of Porter's testimony would have been, or how it would have helped plaintiff.  Again,

---

[3]The hearing record may be considered on a Rule 12(b)(6) motion to dismiss, without converting it to a summary judgment motion under Rule 56.  *See Bennett v. Tucker*, No. 95 Civ. 8029, 1996 WL 288202, at *1 n.3 (S.D.N.Y. May 30, 1996) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), and *Westwood v. Cohen*, 838 F.Supp. 126, 130 n.8 (S.D.N.Y.1993).

plaintiff must allege facts making his claims plausible, and this bare allegation that one witness was denied fails to meet that standard.

Likewise, plaintiff has not alleged that he was prejudiced by the alleged failure to provide him with large-print copies of the misbehavior report or his disciplinary record.  He has not even alleged that he specifically requested such copies, but even if he did, the facts alleged here do not indicate that plaintiff was unaware of the contents of the documents, nor has he alleged what he would have done differently had he been given large-print copies.

To survive a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face."  *Twombley*, 550 U.S. at 547.  Without any factual allegation indicating that plaintiff was prejudiced by the Noeth's alleged denial of one witness and his failure to provide plaintiff with large-print copies of the misbehavior report and plaintiff's disciplinary record, plaintiff's claim "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  Because plaintiff has failed to allege facts showing that he was prejudiced by these alleged constitutional violations, then, his procedural due process claims are dismissed.

**B. Malicious Prosecution**

Plaintiff alleges that the misbehavior report filed by defendant Hockeborn was false, and that as a result of that false report, he was subjected to threats by DOCS officers.  Plaintiff further alleges that he has suffered harassment because his disciplinary record still reflects the incident, even though the hearing disposition was administratively reversed.

These claims must be dismissed.  "The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process ... ." *Faison v. Janicki*, No. 03-CV-6475, 2007 WL 529310, at *4 (W.D.N.Y. Feb. 14, 2007) (citing *Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir.1986)).  *See also Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).  Plaintiff has not alleged any

impermissible motive for the report, such as retaliation.  *See Freeman*, 808 F.2d at 951-52.  In

addition, where a prisoner's period of incarceration is not impacted by disciplinary proceedings,

the inmate has no claim for malicious prosecution under section 1983.  *Dillhunt v. Theriault*, No.

9:07-CV-0412, 2009 WL 4985477, at *16 (N.D.N.Y. December 15, 2009) (citing *Parker v. City

of New York*, No. 05 Civ. 1803, 2008 WL 110904, at * 9 (S.D.N.Y. Jan. 7, 2008)).

Plaintiff has also failed to allege any facts showing that he has suffered any harm because

of the inclusion of this incident in his disciplinary record.  In any event, due process does not

require that prison records containing determinations of misconduct be expunged whenever those

determinations be overturned.  *Wolff*, 418 U.S. at 573.  As for the alleged threats, mere "threats

alone do not deprive a plaintiff of any constitutional right."  *Koehl v. Bernstein*, No. 10-CV-

3808, 2011 WL 2436817, at *18 (S.D.N.Y. June 17, 2011).

## C. Eighth Amendment Claim

Following the disciplinary hearing, plaintiff alleges that he was sentenced to serve two

years in SHU.  Plaintiff alleges that during his time in SHU, he was not given adequate

accommodations for his blindness, causing him to bump into objects and to fall down.  He

alleges that one Dr. Alves more than once recommended that plaintiff be transferred to a facility

where he could be provided with assistance to accommodate his disability, but that this was

never done.

To show that prison medical treatment was so inadequate as to amount to "cruel or

unusual punishment" prohibited by the Eighth Amendment, plaintiff must show that defendant's

actions or omissions amounted to "deliberate indifference to a serious medical need."  *Estelle v.

Gamble*, 429 U.S. 97, 106 (1976).  A medical need is "serious" for constitutional purposes if it

presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Chance

v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66

(2d Cir.1994).  *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious

medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting *Chance*, 143 F.3d at 702).  Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Chance*, 143 F.3d at 702 (internal quotation marks omitted).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294 (1991), that this standard includes both an objective and a subjective component.  With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights.  With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights.  *Id.*  To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.  *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15,19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir. 1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable.  Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06.

Plaintiff has failed to plead facts sufficient to meet this standard.  Plaintiff alleges that between the May 29, 2009 disciplinary hearing and the administrative reversal on September 24, 2009, he suffered physical pain from colliding with objects, and mental anxiety over his situation.  He has not, however, alleged any facts indicating that any defendant involved with plaintiff's care during the relevant time period acted with a subjective desire to cause plaintiff pain or injury.  Plaintiff has not alleged that defendants knew of his plight, or that he requested

any particular accommodation.  At most, the facts alleged by plaintiff might show that defendants were negligent in not providing him with more suitable accommodations, but that alone will not give rise to an Eighth Amendment claim.

**D. Americans with Disabilities Act Claim**

Based on essentially the same facts as those alleged in support of his Eighth Amendment claim, plaintiff also asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201 *et seq.*  In addition to his allegations about falling down and bumping into things, plaintiff also alleges that he was not given assistance such as "sighted guides, and daily living skill aids" to assist him with his day-to-day activities.[4]  Plaintiff seeks compensatory and punitive damages for these alleged violations, and has not requested any injunctive or other equitable relief.

To the extent that plaintiff is suing defendants in their individual capacities, it is well established that Title II of the ADA does not authorize such suits.  *See Browdy v. Karpe*, 131 Fed. Appx. 751, 754 (2d Cir. 2005); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Such claims must therefore be dismissed.

The Eleventh Amendment bars actions against a state absent a waiver of its immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This immunity extends to state officials sued in their official capacities where the state is the real party in interest.  *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988).  Suits for monetary damages against state officials in their official capacity, are therefore barred by the Eleventh Amendment.

---

[4]Plaintiff also alleges that the lack of such assistance rendered his disciplinary hearing unfair.  Those allegations have already been addressed in connection with plaintiff's due process claim.

*See id.*  As plaintiff seeks no injunctive relief; his ADA claims must be dismissed in their entirety.[5]

**E. Equal Protection**

Plaintiff alleges, in conclusory fashion, that his treatment in Sullivan Correctional facility amounts to a violation of his constitutional right to equal protection.  To plead an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the difference in treatment was motivated by plaintiff's on race, religion, national origin, or some other constitutionally protected characteristic.  *See Walter v. Fischer*, 381 Fed.Appx. 991, 992-93 (2d Cir. 2010).  Plaintiff has failed to plead any facts tending to show that he was treated differently than other similarly situated inmates or that such disparate treatment was the result of any constitutionally impermissible motive.  Plaintiff's equal protection claim is therefore dismissed.  *See Ferguson v. City of Rochester School Dist.*, 485 F.Supp.2d 256, 259 (W.D.N.Y. 2007) (dismissing plaintiff's equal protection claim where plaintiff did not allege that she had been discriminated against on account of her race, sex, or some other protected characteristic).

**CONCLUSION**

Defendants' motion to dismiss (Dkt. #13) is granted, and the complaint is dismissed. Plaintiff's motion for appointment of counsel (Dkt. #20) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        August 11, 2011.

---

[5] As plaintiff seeks relief for conditions existing before his sentence to SHU was overturned, there appears to be no injunctive relief that could be afforded to plaintiff.